Mr. Swann, for the defendant, cited White v. Bannister's Ex'rs, 1 Wash. [Va.] 168.

Injunction dissolved.

[See Cases Nos. 1,097 and 17,789.]

## Case No. 17,789.

### WILSON v. BASTABLE.

[1 Cranch, C. C. 394.] 1

Circuit Court, District of Columbia. April Term, 1807.

JUDGMENTS—EQUITABLE RELIEF—INJUNCTION.

A general allegation of difficulty in procuring vouchers, or of unavoidable delay in settling an administration account without stating from what circumstances that difficulty and delay arose, is not sufficient ground of equity to enjoin a judgment at law.

E. J. Lee, for plaintiffs, cited 1 Har. Ch. Prac. 33; 1 Fonbl. 13, 34, 340; Silk v. Prime, 1 Brown, Ch. 138, note; Perkins v. Bayntun, Id. 375; Law Va. p. 165, § 33, and Act Va. 1806, respecting mispleading by executors and administrators; also, Waring v. Danvers, 1 P. Wms. 295; Cockroft v. Black, 2 P. Wms. 298; Croft v. Pyke, 3 P. Wms. 183; Jacomb v. Harwood, 2 Ves. Sr. 268; and Robinson v. Cumming, 2 Atk. 411.

Mr. Swann, for defendant.

[See Cases Nos. 1,097 and 17,788.]

CRANCH, Chief Judge. The bill states that the defendant commenced a suit at law against the plaintiffs as administrators of Cumberland Wilson, deceased, upon a promissory note for £100, to which action the plaintiffs pleaded plene administraverunt, "but from the difficulty and unavoidable delay they met with in getting vouchers for those to whom they had paid money for the estate, and getting the estate account settled, they were not able to produce evidence at the trial of the said suit, that they had fully administered, by reason whereof a verdict and judgment were had against them for the debt aforesaid and 40 dollars damages and 13 dollars 33 cents costs." That since the judgment they have settled their administration account with the Dumfries district court, "by which it will appear that they had fully

1 [Reported by Hon. William Cranch, Chief Judge.]

administered the assets which had come to their hands, and that the estate was indebted to them on the 24th of October, 1801, $17,566." That since the said settlement they have received $896, which reduces the balance to $16,570. That at the time the judgment was obtained in October, 1800, there was due to them for money paid by them for the estate more than $17,566. That they have paid the $40 damages and the $13.33 costs, "and that the defendant owes the said Cumberland $60." That the defendant brought suit in this court on the judgment and obtained judgment thereon, without allowing credit for the $40 damages and $13.33 costs, and will proceed to issue execution thereon, unless prevented by a court of equity;—they therefore pray an injunction, and general relief.

An injunction was granted by one of the judges of this court. The answer of the defendant states that his action was founded on an accepted bill of exchange of Cumberland Wilson. That the trial at law was fair, and contends that the plaintiffs are not entitled to relief in equity; it neither admits nor denies the settlement of the administration account, nor the plaintiffs' allegation of difficulty and unavoidable delay in obtaining vouchers and settling their accounts. But it insists that the defendant's claim was among the first to be preferred in marshalling the assets. It neither admits nor denies the payment of $40 damages and costs; but says he is ignorant on that subject, and is willing to admit it, if paid. At March term, 1805, this court ordered the master to state the administration account of the plaintiffs, noting the times of the respective payments, and certifying the vouchers; upon report it appeared that the sums alleged by them to have been paid by them, in the administration of the estate, were principally sums due to themselves, a large part whereof, and more than sufficient to absorb all the assets, was for bills of exchange, upon which Mr. W. Wilson was indorsed, and which he had taken up more than three years before the death of his testator, and more than five years before the trial of the cause in the Dumfries district court. A strong presumption arises from this circumstance that the vouchers were in his own hands—and if any difficulty did arise in obtaining them in time to produce them at the trial at law, it must have arisen from his own negligence. It at least throws the burden of proof on him to show special circumstances of accident, before any equity can arise in his favor. If he had a right to retain all the assets for the satisfaction of his own debt, he might have availed himself of it at law. The bill does not state any one specific fact of accident which prevented him from doing so, and such an accident cannot be presumed, especially in such a case. Excepting the allegation of the payment of the $40 damages and the costs, which were not credited in the second judgment, I see no

ground of equity in the bill. A general allegation of difficulty in procuring vouchers, or of unavoidable delay in settling accounts, without stating from what circumstances that difficulty and delay arose, is too vague and indefinite even to support an injunction in the first instance.

THE COURT, at March session, 1806, dissolved the injunction, except as to the $40 damages and $13.33 costs, which were admitted by the defendant's counsel to have been paid. Since that time, no evidence has been produced, and the cause having now come to a final hearing, the court can only dismiss the bill with costs.

The allegation, that the defendant was indebted to the intestate in the sum of $60, is an amendment to the bill, I believe made since the dissolution. It is, however, a naked allegation, without circumstances and without proof. In the account taken by the master, it appears that the plaintiffs have paid a judgment for more than $2,000, rendered since that recovered by the defendant. This, probably, would at law be deemed an admission of assets. But at all events, as the bill is totally deficient in equity, except as to the amount paid for the damages and costs, and as no proof, whatever, had been adduced in support of any circumstance of accident, the injunction must be perpetual as to the $40 damages and the $13.33 costs, and the bill must be dismissed with costs as to the residue.